Company. Appellant? Is there an argument on the merits and on the sanction within your opening argument? I'm going to get right to the heart of it. Republic Western Insurance Company drafted an ADA-regulated release agreement that is subject to the Older Workers Benefit Protection Act. That act was enacted to overrule the Ohio Public Employees Benefit versus bets. That act in 1990 has very specific regulations. One of those is found in 29 U.S.C. Section 626F1, large G, states that the agreement shall not become effective or enforceable unless there's a revocation period stated of at least seven days, and it's in the agreement, and the person who waives their rights signs that. The agreement didn't have that. What this company has done is they've used this invalid and unenforceable release agreement as a mechanism to go into state court to charge Mr. Toroff with racketeering and with fraud and a third count of an injunction. If you read the injunction count, you see what they're trying to do is to get him to testify favorably because they had falsified records. They had pulled insurance commissions that was retained by the agent into income to inflate their results of operations in front of a $350 million public offering of securities. The company's parent is now in bankruptcy. Last Friday, public announcement by the SEC, they're seeking enforcement of a subpoena because the company has not produced documents. This agreement was used as a means to place a cordon sanitaire around financial shenanigans that is, and to force Mr. Toroff, just with the weight of it, they said that he had lost over tens of millions of dollars in damages. Force him to capitulate and to agree to testify favorably to them so they could possibly recover some of the money from Mr. Moreno and then suggest that they compromise the claim. Getting all this from the provision in the settlement agreement that said he wasn't supposed that Mr. Toroff wasn't supposed to do anything that was adverse to Republic. That's what they said in court. And they also said there was no publicity. So he couldn't speak to anyone unless they wanted him to. Since we filed our briefs, they have issued an injunction, the state court, based upon the no publicity provision of this agreement. And we've argued an appeal. And I think the state court's going to come out that the ADEA provision only related to the release of ADEA claims. We think that the statute says what it says. And if I can quote the Connecticut National Bank v. Germain, which is, I guess, just as Thomas said, when a statute says what it says, and it's clear, you don't go any further. I think we put that in our brief. What I'm saying is, right now, Mr. Toroff and his agents, which conceivably includes me, have under a content-based injunction not to speak, not to seek any publicity at all, not to speak to the press. And this is an issue of general public importance. Mr. Toroff gave an interview to the Dow Jones Newswire people. They published a story about the parent's financial problems. The parent has gone bankrupt. I have in front of me something that we received through another counselor suing on behalf of the class action people that says that this company hasn't cooperated with the SEC or the Department of Insurance. That's an issue that should be in front of the public. He can't place it in front of the public because they used this contract, basically, to go into state courts and use the power of the state court to compel him to stay quiet. That's where we stand today. I think that's a very, very important issue. That issue has been developing over the last several years. Your Honor, do you have a question for me? No, okay. On the other questions, federal jurisdiction, I think that under the case of going way back to Bell v. Hood, this case, the complaint was dismissed for lack of federal jurisdiction. Federal jurisdiction was alleged. It was alleged, as long as you allege something that arises out of the statutes of the United States or the Constitution, you have jurisdiction. The judge initially found no diversity jurisdiction and turned around and found, basically, clarified her ruling when we said, if you have found that there was a failure to state a federal claim for relief under the ADEA and the Sherman Act and the First Amendment complaint, you have to give us a right to replead because that was the first time that the court had addressed that First Amendment complaint. We were not given a right to replead, and I do think that we're entitled to a right to replead under Bell v. Hood because the court shouldn't make a decision that there's no jurisdiction and then decide that there's a failure to state a claim. On the – another issue which is, I think, of interest to this court is the question – because it doesn't come up much – is the question of the remand motion. Judge Silva issued a remand motion. We filed our amended complaint certified – verified in order to get injunctive relief. In that complaint, Mr. Turov alleged his domicile and his jurisdiction was the only evidence in the record. I know that the defense counsel had argued that NAPR applies, but if you're on his look at NAPR, page 367 of the opinion, NAPR is very distinguishable because in NAPR they said the party who had been remanded in one case never put any evidence in to establish domicile in the second case that was, I guess, commenced within five or six weeks thereafter. I think that's an issue. This is an issue that goes to the heart of the First Amendment, I see it, because the company here basically takes the statute and turns it on its head. It puts in this agreement provisions that it says allows it to tell Mr. Turov who he can do business with, who he can't do business with, and then they turn around and tell him you can't speak to people, you can't engage in certain lines of business. We do have evidence in this record that the president of the company said that this was an attempt to force him not to compete in lines of business where the company was competing. I think that's a contract in restraint of trade, and I do think it passes muster under the Antitrust Act, notwithstanding the Karen Ferguson Act, because under 15 U.S.C. section 103, agreements that are coercive in nature are subject to antitrust scrutiny. I do think we stated a claim. I think we should have a right to go back. As far as the one other point I'd like to raise is that the district court here dismissed this complaint after discovery was done. We had gone through, we have enough to prove our case, we believe. We do think that the statute should be read the way it says it is, that that agreement was invalid, and that agreement served as the basis, and I think that's in our ‑‑ it's in the supplemental submission to this Court, served as a basis, that invalid agreement, to put content-based prior restraints on Mr. Tura. He has been restrained from saying anything publicly about ‑‑ At the time the district court dismissed the suit, there was no State court injunction, correct? No, but there was, at the time we filed our amended complaint, there was, if you look at the count three of their complaints, their complaint sought, in paragraph 108, sought to enjoin Mr. Tura from acting against the best interest. It says that he served ‑‑ Okay. They had filed their complaint. What I asked you was, at the time injunction was issued by the State court, the district court had already dismissed the suit. Correct. Okay. Correct. But what I'm saying ‑‑ I understand what you're saying is that they had filed. This is something that came up afterwards, and they said at the time when they filed their motion to dismiss, they incorporated the arguments in their motion to dismiss the first amended complaint at page five in their motion that they made in the district court in California. And those arguments are very plain and simple. That we can ‑‑ we do believe that this agreement is enforceable. It's enforceable under Arizona law. And under Arizona law, we can stop Mr. Tura from speaking to whoever we want to cease him from speaking to. They said that very plain and simple. We believe that they were contentions that were made, which are judicial admissions, and we sought very, very quickly. We wanted to get rid of ‑‑ end this case very quickly. And that's what we originally sued for declaratory relief, because we wanted to bring Moreno into this case and have all the parties in one forum demonstrate that Mr. Tura has not violated the racketeering statutes. And that's important, by the way, because this is the only case where that is pending right now. The defendants have removed, have basically withdrawn that claim in the State court, but they have not dismissed it. I moved for summary judgment on that claim. The State court has so far refused to grant that summary judgment. And Mr. Tura's rights are impaired because the State Department of Insurance in California are still looking at that because he's been charged with racketeering and it's never been resolved. So we think that makes it very judicial controversy. With that, I'm going to pass it to my colleague. Good afternoon, Your Honors. In In re Yagmin, the Ninth Circuit addressed the very delicate balancing act that courts must perform before they determine whether to sanction an attorney for abusive tactics or vexatious litigation. While the Yagmin court did say the court should not waver in imposing sanctions when warranted under the circumstances, the court also held, and I quote, at the same time we embrace the fact that zealous advocacy is the attorney's ideal. Hard-fought, energetic, and honest representation is at the bedrock of a judicial process. None of the various rules and sanctions that authorize, none of the various rules and statutes that authorize sanctions are intended, nor should they be implemented, to chill an attorney's enthusiasm and creativity in pursuing factual and legal theories. By upholding the $20,000 sanction award against Mr. Prangay, it would serve not only a grave injustice, but it would have the effect of chilling zealous advocacy and, in effect, an attorney's First Amendment rights to litigate and defend their clients. Nineteen twenty-seven sanctions must be supported by a finding of subjective bad faith. Your Honors, I respectfully submit the sanctions against Mr. Prangay in this action are not warranted because there is nothing in the record before this Court, whether in fact or in law, that supports a subjective bad faith, or any bad faith for that matter. In fact, a review of the final order by the District Court strongly suggests that the only basis for sanctions against Mr. Prangay is based on the Court's adoption of RWIC's false representations. In particular, the final order states, quote, the litigation was instituted in the Central District of California as a diversity action. The Court then says that Judge Silver, when the judge remanded the Arizona District Court case, specifically held that Turov was an Arizona resident for purposes of diversity. Now, setting aside the issue that residence is not the proper issue, it's domicile, nothing in the District Court, nothing in Judge Silver's order says that. There is nothing in the order that says that it was that he – nothing made a specific factual finding of residency. All Judge Silver did was show some doubt and remanded based on that. These statements that the original complaint was based solely on diversity, and further, that Judge Silver remanded because they found specifically no diversity, is – is contradicted not only by the allegations of the complaint, but also by RWIC's own allegations in their motion. The complaint itself sufficiently alleges diversity in addition to Federal question based on the Older Workers Benefit Protection Act, as well as the First Amendment. Although perhaps not perfectly pled, it satisfies Rule 8a in Connolly, which says we have a – we need a short, simple statement of the case which gives the defendants fair notice. Clearly, the defendants had notice. In their own motion to dismiss, they specifically state, and I quote at – this is Excerpt of Record 46, page 13, lines 13 – lines 3 through 5. Mr. Turoff's second count is a long-winded and – I'm sorry, convoluted one, which ultimately rests on the premise that RWIC somehow invaded his constitutional rights under the First Amendment. In that same motion to dismiss, the very same complaint they allege is based solely on diversity, RWIC again argues that Mr. Turoff's second count rests on one basic allegation, that RWIC somehow seeks to prevent him from interacting with Mr. Marino. It is from this that the table-banging – table-pounding begins as to infringement of constitutional rights and the Older Workers Benefit Protection Act. How could they say that this was based solely on diversity, and yet in their motion to dismiss that very same complaint acknowledge that it is based on Federal question jurisdiction? That is – that is pure false representations, and that was adopted by Judge Silver's ruling. If you look at the order, Judge Silver – I'm sorry, not Judge Silver, Judge Bolton, the district court – finds – the court finds that Turoff's counsel, Mr. Prange, acted with subjective bad faith by continuing to prosecute this case in Federal court after the determination had been made in the State court litigation would be remanded because Turoff was an Arizona resident. That was never made. Judge Silver never found that Turoff was an Arizona resident. The court continues. The frivolous, non-meritorious Federal questions purportedly raised in the First Amendment complaint were raised solely to attempt to litigate in this court while parallel proceedings arising out of the same events continued in State court. This finding by the court, based on RWIC's false representations, that there was no diversity – there was solely diversity jurisdiction, and then there was none because Mr. Turoff was an Arizona resident, that sets the underpinnings of the court's ultimate decision, that somehow our – that Mr. Prange has sought to file this Federal – the First Amendment complaint to try to get around the fact that it had no jurisdiction when clearly Federal-questioned jurisdiction was alleged. Based on these erroneous findings, the court holds that Mr. Prange acted in subjective bad faith by noticing depositions and direct contravention of Rule 26D, by acting vexatiously under all circumstances, by filing a motion for partial summary judgment. As argued in the papers, Your Honor, Rule 83B clearly states that Mr. Prange cannot be sanctioned for something that is not prohibited by the law. He timely filed his papers. He timely served his notices pursuant to all the rules. In fact, RWIC concedes this. They say Mr. Prange did act appropriately and that he complied with the rules in the deadlines. But although he complied with the law, nonetheless, he should be sanctioned $20,000 because he filed and maintained this lawsuit in the forum after Judge Silver's ruling. Well, Judge Silver's ruling is irrelevant. Judge Silver's ruling didn't prevent Mr. Prange from filing this lawsuit. Basically, Mr. Prange is being sanctioned for choosing to litigate to vindicate federally protected constitutional rights in a Federal forum. And in order to determine whether or not that is bad faith, we have to look at the circumstances, circumstances where RWIC has tried to gain an unfair advantage over Marino in mediation proceedings over some $2.5 million in disputed commissions by trying to get Mr. Turok to testify either falsely or not testify at all. They threatened him that they would file a lawsuit against him seeking tens of millions of dollars on numerous occasions, and they threatened him that they would they tried to coerce him to testify falsely if he were to testify at all. Not only does RWIC follow through on these threats and file this bogus racketeering and fraud claims, which, by the way, are no longer trying to do. Did they actually say, you know, you must testify falsely? I thought the argument was that they were saying that the settlement agreement requires or did they actually say that he cannot, that if he testifies, said to him if he testifies in this action in favor of Marino, that it's in violation of the settlement agreement? Well, I'm not sure I understand your question. Did they actually tell him that he had to testify falsely? Yeah. Yes. The verified First Amendment complaint alleges such, and it's not disputed. Nothing has been disputed. There's allegations by RWIC, by RWIC's counsel. I thought it was an argument you're making based on the wording of the settlement agreement. No, these are actual threats that were made to Mr. Turok. All right. There's only less than two minutes for rebuttal, if you want to save. Just really quick.  Thank you, Your Honors. Your Honors, I would submit that there are three primary issues before the Court. First, whether or not there was diversity jurisdiction. Second, whether there was a viable federal claim for relief. And third, whether the sanctions award should be upheld. First, with respect to diversity jurisdiction, this was the second bite at the diversity apple. Republic Western started all of this by filing a state court case against Mr. Turok. Mr. Turok, in response to that, in July of 2002, responded by filing essentially this case. This case was initially filed in the Central District of California. At the same time, he removed the state court litigation, and that is what led to the remand order by Judge Silver. Judge Silver found that, in fact, there was no diversity jurisdiction. Well, can't that change day by day? It certainly can, Your Honor. And the dates here, there is a little bit of difference because, with respect to the state court suit, the determination would have to be made on July 6th, which was when the state court suit was filed. The federal court suit was filed on July 25th. And so there theoretically could be a difference. I would submit that, in this case, when they argued that there was diversity here, there was never any evidence put forward that anything had changed in those three weeks. In fact, Mr. Turok himself had moved to Texas in March, and there was never anything proffered that anything had changed in that three-week time frame, Your Honor. Judge Silver found that there was no diversity jurisdiction. That was based on the wife still living in Arizona? That was certainly one of the things that both Judge Silver and Judge Bolton looked at, yes, Your Honor. There were several facts that suggested that Mr. Turok had not changed his domicile to Texas. And both Judge Silver and Judge Bolton analyzed those facts. The starting point was the presumption under the Lew case, which is a Ninth Circuit case, that once one establishes a domicile, there's a presumption against changing it. Mr. Turok himself had been a resident of the state of Arizona for some period of time. In March of 2001, he took a job in Texas, and at that point in time, maintained an apartment. At the same time, however, he kept his residence here. He kept a joint checking account here. He visited his wife here on weekends. And so the question that was raised is, did he not only move himself permanently with respect to his physical presence, but also did he intend to establish a new domicile? There were certainly facts, Your Honor, that went both ways on that. One of the things that both Judge Silver and Judge Bolton considered was, well, it looked to them as if maybe this was just a temporary situation. Mr. Turok argues, well, I testified and said it was not just a temporary situation. Under the Lew case from this Court, though, the Court held that you look at objective facts and certain self-serving statements are given very little weight. The trial court, both Judge Silver and Judge Bolton, weighed all of these facts and made a determination. And Mr. Turok concedes on this appeal, Your Honors, that that review of this issue was on a clear air standard. And the trial court, both Judge Silver and Judge Bolton, applied the appropriate legal test. What is the appropriate legal test? The appropriate legal test being that the plaintiff, at least in this case, bore the, had the burden of proving jurisdiction and that there was a presumption against a change of domicile. And I think appropriately, Your Honor, applied the appropriate factors from the Lew case in determining whether or not there had been a change of domicile. That's what I meant when I said the appropriate legal test. But Judge Silver decided that, I don't know, is it he? She. She. She felt obliged to reject the jurisdiction if Turok left any doubt. That was certainly one thing in her decision that would not necessarily be applicable with respect to Judge Bolton's decision because it was a, it was a removal situation. However, all of the same factors and facts were analyzed by Judge Bolton. And under the Knapper decision. So you're saying that Judge Bolton did not adopt that standard. That's correct. But she did not say that, that I'm going to adopt any doubt standard. What she did is that she said, as I just said a moment ago, that the plaintiff has the burden of proving or establishing jurisdiction, number one. And number two, under the Lew case, there is a presumption against a change of domicile. And so Judge Bolton applied the appropriate legal test and looked at the relevant factors. And I think that what we have here is certainly the danger of having inconsistent decisions. And that certainly would not, I don't think, be appropriate to finding in one case that there is diversity and in another case that there isn't. In any event, Judge Bolton did not simply blindly adopt what Judge Silber did, but she also looked at all of the relevant facts and made a factual determination that was supported by the evidence in front of her. The plaintiff has contended that they should be allowed to re-plead. The problem with that is they never proffered an amended complaint and never alleged exactly what it would, what it was that they would contend they would re-plead and how they would rectify any problems. All of the operative facts on jurisdiction were there, and they haven't identified anything new that they would propose to offer. With respect to whether or not there is a federal claim, there were three potential federal claims that were raised here, a constitutional violation of free speech, number one, a claim for antitrust violations, and a claim under the Older Workers Benefit Protection Act. Judge Bolton appropriately found that the complaint did not state a viable claim for relief on any of those grounds. With respect to the free speech claim, there simply was no state action, and no state action has been identified in any of the papers or here. The only thing that they've cited to is Shelley v. Kramer, and Shelley found only that a federal court might be able to review a state court order that unconstitutionally imposed restrictive covenants in an unconstitutional way. There is no such order here. The injunction that Mr. Prange referred to is not before the court in this record, and in any event, all of the arguments that have been proffered here have been proffered to the state court. With respect to the antitrust claim, the antitrust claim was fatally flawed for at least two reasons. There was no group or concerted activity, and there was no injury to competition. There were certainly no allegations made with respect to those, and the claim did not state a viable cause of action. The basis for the antitrust claim was the mutual release agreement that was entered into between Republic Western and Mr. Turoff in December of 2000. That was a private contract between Republic Western and Mr. Turoff. What he is alleging was unfair is Republic Western's own actions against him and Republic Western's own interpretation of that contract. If Republic Western is wrong or has done anything unfair, Mr. Turoff very well may have at least a claim for breach of contract, perhaps even unfair competition. What he doesn't have is an antitrust claim. There's no antitrust claim for unilateral activity, which is all that we have here. There's also no allegation. I don't see a case cited in Judge Silver's opinion that supports the idea that this cannot be an antitrust claim. Judge Bolton. Right. Judge Bolton. It seems to me that there are some cases in other circuits that suggest that this kind of contract can constitute an antitrust violation. What case do you rely on that says that a contract that can be in restraint of trade between an individual and a company can't constitute? First of all, Your Honor, the OSC Corp case, which was a Ninth Circuit decision of this Court, found that there had to be a group or concerted activity. That unilateral activity by one actor does not support a claim under Section 1 of the Antitrust Act. Unilateral activity can support a monopolization claim, but it cannot support a Section 1 claim. They're simply, if in fact they are correct in this case, every contract that an employer and employee enter into that affects some type of non-compete provision or anything along that line would be subject to antitrust analysis. And quite frankly, Your Honor, I'm not aware of any cases that have so hold. The only case that we cited that was cited in the briefs was the Postal case, which is from the District of Colorado, that said, look, cases that deal with non-competes between employers and employees simply aren't subject to antitrust analysis. There is simply no group or concerted activity in this type of situation as required under Section 1 of the Sherman Act. Look, Your Honor, like you may be about to ask another question. That's why I hesitated. You may be right ultimately about it, but I'm not sure why we could say it's such a frivolous claim. You may be right that the Court should say, no, I don't find that this is a claim as a matter of law. But unless it's a fairly well-established proposition, it doesn't reach the bell versus hood or whatever it is. You know, it's so frivolous that it's you lack jurisdiction. That's a pretty extreme standard. Well, I think that what Judge Bolton has is simply doesn't state a claim upon which relief can be granted. If you look at the allegations of the complaint, taking them all as true, all he has is a contract between himself and Republic Western. He's not alleged that there is any anti-competitive activity. There's no conspiracy. There's no illegal combination. I thought we were on a 12B1 here. It's jurisdiction. It certainly is. It certainly is. But I think that what Judge Bolton's order found and what we argued to her was that these claims, the federal claims, did not state viable causes of action. And that's what she found. They were not viable claims upon which relief may be granted. And, therefore, absent those claims, she found that there was simply no federal jurisdiction. And because there was also no diversity. And also in connection with the antitrust claim, for a second reason, there's no allegation here, as there must be, that there was any harm on competition. The OSC case, again, says that harm to the plaintiff just isn't enough. And this kind of goes along with the notion that there must be some group activity. Harm to the plaintiff isn't enough. There must be some damage to competition either under the rule of reason analysis or under the per se analysis. And there's simply no allegation that competition here in the insurance industry was damaged by this. This, I would submit, Your Honors, didn't even come close to alleging a viable claim for relief under Section 1. And I would submit, Your Honors, certainly was frivolous. That there was no allegation that there was any, any damage to competition here in the insurance industry. And, again, under the OSC Corp case, that's what they have to establish. And they certainly can't establish a per se violation. Per se violations, of course, are grounded that there are some allegations that in and of themselves are so serious that they will be presumed to cause an impact on competition such as horizontal conspiracies between competitors or vertical conspiracies that deal with prices only. There's no such allegation here. They don't even come close. And I would submit, Your Honor, that in argument here and in rebuttal argument, there's going to be no contention made that the elements of an antitrust claim have even come close to being met here. Finally, with respect to the Older Workers Benefit Protection Act, the Older Workers Benefit Protection Act contains certain requirements which are necessary to release age discrimination claims. That's what the Act deals with. 29 U.S.C. Section 626F states that an individual may not waive any right or claim under the chapter unless the waiver is knowing and voluntary. Waiver may not be considered knowing and voluntary unless and then it goes on from there. In their opening brief in this case, Mr. Turoff states that at page 34, Turoff does not contend that the pretextual use of the MRA precluded Turoff from asserting any ADEA claim. He makes no contention in this case that he was discriminated against based upon age in December of 2000. Can I go back to the ante? Of course, Your Honor. Are you familiar with Neuberger Loeb v. Gross from the Second Circuit? Not off the top of my head as I stand here, Your Honor. I apologize. Because it says in affirming the district court, we need not pass upon the general applicability of the Federal antitrust laws to post-employment restraints. Although such issues have not often been raised in the Federal courts, employee agreements not to compete are proper subjects for scrutiny under Section 1 of the Sherman Act. When a company interferes with free competition for one of its former employees' services, the market's ability to achieve the most economically efficient allocation of labor is impaired. And it goes on. Isn't that similar to this case? No. Your Honor, and I do apologize. I'm not familiar with the case as I stand here. There possibly could be a situation where there is a non-compete provision that resulted somehow from some illegal combination or conspiracy by a group of defendants and it had some effect on competition. That is certainly possible. But on this case, there is no such allegation. Again, Your Honor, there is no allegation that there is an impact on competition in this case. There may be a case where it could be alleged and there could be an illegal, there could be some type of illegal combination, but certainly not on the facts that are alleged in this complaint. And as I stated, Your Honor, that we had cited the postal case from the District of Colorado for the general proposition that these contracts are generally not subject to antitrust analysis. All right. I'm sorry. You were going on to the other point. I was on the Older Workers Benefit Protection Act. Yes. And I think I was saying that in this case, Mr. Turok is not contending that he was discriminated against based upon age in December of 2000. That's not what he's alleging. And no contention is made by either party that there was any type of waiver of any future age discrimination claim. In this case, all Mr. Turok claims is that Republic Western sought to enforce a waiver of future rights. But there was no attempt by Republic Western to enforce any type of waiver of future rights under the Act. All that there was, at most, based upon the allegations in the complaint, is that Republic Western sought to enforce the contractual commitments in the mutual release agreement. So what Mr. Turok's argument is left to is a contention that whenever you have a contract between an employer and employee that may be subject to the age to the ADEA because the employee is entitled to those benefits, and I think that's anybody over age 40, that if you don't follow all of these strict requirements, the notice provisions, et cetera, that none of the provisions in the contract are enforceable. And, Your Honors, there is simply no case that has so held. There's been no case cited to you, and there will not be, by counsel, any such case cited to you. As I read the Act when I started my comments on this argument, 29 U.S.C. says an individual may not waive any right or claim under this chapter. That's what it has to deal with. It does not mean that each and every contract that may be entered into between an employer and an employee, anybody over the age of 40, is null and void or not enforceable unless all of these requirements are met. There simply has been no case cited for that proposition, and there's no support under the statute that they are relying on. In fact, the mutual release agreement in this case contained mutual covenants back and forth. Mr. Turok got $30,000 in exchange for this, which he certainly hasn't repaid, and there were releases that went back and forth both ways. And if you actually look at the complaint, Mr. Turok relies on the releases for his contention that Republic Western's claims lacked merit. There's simply no claim under the Older Workers Benefit Protection Act. Lastly, Your Honors, with respect to the sanctions motion, the trial court, again, this is a clear air review, and the trial court's discretion comes into play in determining whether or not sanctions are in order. 28 U.S.C. Section 1927 provides that sanctions can be entered when the litigant so multiplies the proceedings in any case unreasonably and vexatiously. The sum and substance of the contentions that were made here was that all of this matter, this entire matter, simply should have been litigated in state court. That's what should have happened. All of the things that were raised here were really nothing more than defenses. In fact, if you look at the complaint, in particular the first complaint that was filed, but even the first amended complaint, what it in its essence says, the state court case has no merit that was filed by Republic Western. That's what it says. That's the essence of this complaint. It's not a federal claim. It should not have been litigated in federal court. If that was Mr. Turoff's position, then he should have defended the state court case and not filed a new claim. Once Judge Bolton saw the merits of the claim, determined them, she agreed with that. She agreed that this simply didn't need to be done. And it wasn't just litigation. It was litigation run amok. It was deposition notices, subpoenas. You name it, it happened, a precipitous motion for summary judgment. None of that should have happened. And Judge Bolton, in her discretion, appropriately imposed sanctions. Your Honors, there is simply no basis for federal jurisdiction here. This case was started, again, started by Republic Western State Court. It was remanded because there was no diversity. The trial court here properly found there was no diversity and there was no viable federal claim. And this Court should affirm. My time just ran out, and I thank you for your attention. Thank you very much. I want to speak very rapidly. Your Honor, you're right about the employee agreements. United States v. American Tobacco, 221 U.S., 106 at 183, I believe, 1911. They were doing that. It's a violation. The diversity issue, no evidence in this record other than the verified complaint. We put the verified complaint in. There's nothing else in this that was before this judge other than that. They submitted some of the stuff that was submitted to Judge Silva, but only on the sanctions motion. This judge decided this based upon Judge Silva's opinion, that's all, and what they said what Judge Silva's opinion was. And we did state in our motion to replete what we were going to state. One of the things was that Silva relied on that this was a month-to-month lease that he signed. It was a typo. In fact, the woman at the windmill apartment sent a letter to the judge indicating that it was a typo. So, I mean, we do have a right to replete on that. The question of state action, Justice Brennan, from New Jersey, like I am, the test on state action is whether or not the power has, in fact, been exercised. They used the power to coerce him. They wanted him, and they wanted me to agree to have him testify in a way that would be favorable to get rid of this huge tens of millions of dollars RICO case. This is improper use. What you're talking about is Republic. Republic Western, yes. Republic Western used the power of the state by filing this bogus case with a Republican attorney general who had been out of office, had a lot of influence. They asked the State Department of Insurance to convene a state grand jury. I'd like to address those issues if I get a chance in the district court. The WBPA, just as a last matter, the statute means what it says and it says what it means. If you don't have a revocation provision, the agreement, it doesn't say any of the rights. It says the agreement shall not become effective and enforceable, and they used this agreement. It was replete with problems. If you look at EEOC versus Cozumel, they asked him not to file any charges against this company. That's a violation of 26, Section 626F4, and it also violates public policy. He does have a right to speak to the press about his case and to speak about issues of general public importance, and so do I. I mean, this is a company that's gone amok. Thank you. Thank you, counsel. Thank you both. The case is adjourned. It will be submitted. The court will stand in recess for the day. All rise. This court will recess and stand adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you.
judges: B. Fletcher, Reinhardt, Restani